UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JASON SENECA                                           CIVIL ACTION

VERSUS

METROPOLITAN LIFE INSURANCE                NO. 23-00109-BAJ-SDJ
COMPANY

RULING AND ORDER

This is an ERISA case. Before the Court is Plaintiff's **Motion For Judgment Under F.R.C.P. 52 On ERISA Administrative Record (Doc. 26, the "Motion")**. The Motion requests that the Court reverse Defendant Metropolitan Life Insurance Company's decision to terminate Plaintiff's long-term disability benefits. (Doc. 26). Defendant has filed a Response to Plaintiff's Motion, which the Court construes as a competing motion for judgment brought pursuant to Federal Rule of Civil Procedure 52. (Doc. 27). For reasons provided herein, Plaintiff's Motion will be denied, and judgment shall be entered in favor of Defendant.

I.    BACKGROUND

Plaintiff Jason Seneca brought this suit to recover long-term disability benefits that were terminated by Defendant Metropolitan Life Insurance Company as of September 13, 2020.[1] Plaintiff was a member of his employer's disability plan (the

---

[1] Plaintiff's Complaint also included a claim for life insurance waiver of premium benefits. (Doc. 1 at p. 3). Defendant notes that the disability plan at issue here did not provide life insurance waiver of premium benefits. (Doc. 27 at p. 1). The disability plan provided to the Court supports Defendant's assertion. (*See* Doc. 10-1 at p. 57). Plaintiff also appears to no longer dispute this issue. (*See* Docs. 26-1, 28). The Court therefore concludes that Plaintiff has waived this claim and will not address it herein. To the extent Plaintiff has not waived

"Plan") prior to becoming disabled. The Plan was at all times governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.

## II.    LEGAL STANDARD

### a. Rule 52

Plaintiff has requested judgment on the pleadings pursuant to Federal Rule of Civil Procedure 52. (Doc. 26). Rule 52 requires the Court to "find the facts specifically and state its conclusions of law separately." Fed. R. Civ. P. 52. Courts need not provide findings of fact on "all factual questions that arise in the case," *Koenig v. Aetna Life Ins. Co.*, No. 4:13-CV-0359, 2015 WL 6554347, at *3 (S.D. Tex. Oct. 29, 2015), nor must courts provide "punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Cent. Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (quoting *Burma Navigation Corp. v. Reliant Seahorse M/V*, 99 F.3d 652, 656 (5th Cir. 1996)). Rather, Rule 52 is satisfied when the findings "present the reviewer with 'a clear understanding of the basis for the decision.'" *Batchelor v. Life Ins. Co. of N. Am.*, 504 F. Supp. 3d 607, 610 (S.D. Tex. 2020) (quoting *Cent. Marine Inc.*, 153 F.3d at 231). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision." Fed. R. Civ. P. 52. Here, the Court's findings of fact and conclusions of law will be provided in this Ruling and Order, and will be based solely on the administrative record and the parties' respective briefs.

---

this claim, the Court finds that said claim is subject to dismissal.

### b. Standard of Review

The parties agree that ERISA preempts all state law claims related to the Plan. (Doc. 12). The parties also agree that the Plan vested Defendant with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Plan. (*Id.*). The Court therefore reviews Defendant's decision to terminate Plaintiff's long-term disability benefits on an abuse of discretion standard. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007).

Under this standard, a plan administrator's decision will only be upset if the administrator acted in an "arbitrary or capricious manner in denying benefits." *Id.* (citing *Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999)). A decision is arbitrary when there is no "rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)). Plaintiffs carry the burden of proving an abuse of discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 813 (5th Cir. 2019). This remains true even when a plaintiff has previously qualified for disability benefits. *Batchelor*, 504 F. Supp. 3d at 610. However, when, as here, the administrator of the Plan and the insurer are one and the same, there is "a conflict of interest," and the abuse of discretion standard is "somewhat less deferential." *Jenkins*, 487 F.3d at 314.

In reviewing a decision to deny or terminate benefits, courts are limited to the administrative record and "may inquire only 'whether the record adequately supports the administrator's decision.'" *Id.* (quoting *Gooden*, 250 F.3d at 333). The

administrative record has been provided to the Court. (Docs. 10-1, 10-2, 10-3, 10-4, 10-5, 11-1, and 11-2, hereinafter referred to as the "AR"). The AR exceeds 2,000 pages. (*Id.*).

Adequate support is found when an administrator's decision is supported by "substantial evidence," which is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)). Finally, a court's review of a benefits decision need only conclude "that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Corry*, 499 F.3d at 398 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).

## III.  FINDINGS OF FACT

### a.  Initial Determination

Plaintiff began receiving long-term disability benefits on September 13, 2018. (AR at p. 1674-1675). Prior to becoming disabled, Plaintiff was an IT Administrator with HP, Inc. and a member of the long-term disability plan the company held with Defendant. (*Id.* at pp. 1, 398). Plaintiff suffered from poor health for several years prior to becoming totally disabled. (*See, e.g., id.* at pp. 827-847). Defendant's approval of Plaintiff's original long-term disability claim did not identify specific limiting conditions, but was issued after Plaintiff was diagnosed with rheumatoid arthritis and neuropathy. (*Id.* at pp. 1674-1675, 1750). Plaintiff's last day of work with HP,

Inc. was March 17, 2018. (*Id.* at p. 1674). Plaintiff's job duties consisted of maintaining approximately 200 printers and performing occasional onsite repairs of the same. (*Id.* at p. 918). In the course of his duties, Plaintiff was required to routinely walk, bend, stand, and lift printers. (*Id.*).

Defendant received several Attending Physician Statements ("APS") prior to determining that Plaintiff was eligible for long-term disability benefits. (*Id.* at pp. 1683-1685). Dr. Philip Padgett, Plaintiff's primary care physician, wrote an APS on March 6, 2018, stating that Plaintiff reported to have joint pain and difficulty walking long distances. (*Id.*). Plaintiff sought Dr. Padgett's care after his responsibilities as an IT Administrator were changed to require Plaintiff to walk six miles daily. (*Id.* at p. 643). Dr. Padgett opined that Plaintiff could return to work with modifications, but that disability should be determined by a rheumatologist. (*Id.* at p. 1684).

Enter Dr. Bobby Dupre. On March 7, 2018, Dr. Dupre created the first of his four APS which provided, from a rheumatology perspective, that Plaintiff was disabled by rheumatoid arthritis and neuropathy which caused "joint swelling, pain, [and] tenderness in multiple small joints of hands, wrists, elbows, and feet." (*Id.* at pp. 1714-1716). Dr. Dupre predicted Plaintiff would be able to return to work without restriction in approximately six months. (*Id.*). However, Dr. Dupre also opined that Plaintiff could work with restrictions, such as Plaintiff working from home, not walking more than ten minutes continuously, and not manipulating anything above twenty pounds. (*Id.* at p. 1715). One month later, Dr. Dupre stated that the cause of Plaintiff's disability was only rheumatoid arthritis, and that Plaintiff could return to

work without restriction in six weeks to three months. (*Id.* at p. 1727). In this APS,
Dr. Dupre opined that Plaintiff was unable to perform restricted work. (*Id.*). On May
23, 2018, Dr. Dupre wrote his third APS. (*Id.* at p. 1732). He estimated then that
Plaintiff could return to work in approximately two to five months. (*Id.* at p. 1733).
Dr. Dupre again altered the identified disabilities to include neuropathy. (*Id.* at p.
1732). These conclusions were reaffirmed in Dr. Dupre's fourth and final APS, dated
July 12, 2018. (*Id.* at p. 1750).

To treat his rheumatoid arthritis, peripheral neuropathy, and joint pain and
swelling, Plaintiff was prescribed methotrexate and Rheumate. (*Id.* at p. 1735-1738).
Plaintiff reported no adverse effects from these medications to Dr. Dupre. (*Id.* at pp.
1735, 1755). At his last visit with Dr. Dupre, Plaintiff initiated further treatment
with Humira. (*Id.* at p. 1757).

On September 24, 2018, Defendant informed Plaintiff that he would receive
long-term disability benefits under the Plan effective September 13, 2018. (*Id.* at pp.
1674-1675). Plaintiff received these benefits from September 13, 2018, to September
13, 2020. (*Id.* at pp. 1002-1010).

The Plan defined "totally disabled" as, during the "Elimination Period and the
next 24 months," an inability to perform with reasonable continuity the substantial
and material acts necessary to perform an employee's usual occupation in the usual
and customary way. (*Id.* at p. 27). After the Elimination Period elapses, total
disability refers to the inability to engage with reasonable continuity in any
occupation which the employee could reasonably be expected to perform given the

employee's age, education, training, experience, station in life, and physical and mental capacity. (*Id.*). Those receiving benefits under the Plan are required to periodically send Defendant proof of continued disability. (*Id.* at p. 37). Failure to do so, or Defendant's determination that payees are no longer disabled, results in a termination of benefits. (*Id.* at p. 31).

### b.    Secondary Determination

On January 15, 2020, Defendant notified Plaintiff that another disability determination would be made in September 2020, and that Plaintiff needed to provide Defendant with evidence of his ongoing disability in order to keep his benefits. (*Id.* at pp. 1351-1353). On July 30, 2020, Defendant requested updated medical records and APS for Plaintiff. (*Id.* at pp. 1239-1257). Defendant received updated records, but no APS. (Doc. 27 at p. 8).

### i.  Dr. Dupre

The updated medical records from Dr. Dupre reflected that Plaintiff generally met with him every three months between October 2018 and June 2020. (*Id.* at pp. 8-9). On October 18, 2018, Plaintiff felt that the Humira treatment was working to alleviate some of his symptoms. (AR at pp. 1325-1328). At this visit, Dr. Dupre cast doubt on the previous diagnosis of rheumatoid arthritis, and indicated that a diagnosis for psoriasis and idiopathic progressive neuropathy was likely warranted. (*Id.*). Plaintiff continued to improve, and informed Dr. Dupre on January 17, 2019, that he had resumed playing guitar and other recreational activities. (*Id.* at pp. 1328-1333). On May 16, 2019, Plaintiff denied any difficulty with the prescribed

medications, and Plaintiff's formal diagnosis was changed to psoriatic arthritis. (*Id.* at pp. 1506-1510). Plaintiff stated that he was feeling better than he had in a long time. (*Id.*). On August 16, 2019, Dr. Dupre concluded that Plaintiff's psoriasis was in remission. (*Id.* at pp. 1510-1516).

Plaintiff saw Dr. Dupre on three additional occasions: November 22, 2019, February 17, 2020, and June 4, 2020. (*Id.* at pp. 1342-1349, 1276-1284, 1094-1097). At these visits, Dr. Dupre noted that Plaintiff experienced lower back pain, as well as joint pain and stiffness. (*Id.*). Dr. Dupre concluded that the cause of these symptoms was principally chronic peripheral neuropathy, rather than psoriatic arthritis. (*Id.*). Plaintiff took Neurontin for this chronic peripheral neuropathy, which mitigated his symptoms without any noted adverse effects. (*Id.*).

### ii. Dr. Padgett

Plaintiff's updated medical records showed six visits with Dr. Padgett, beginning in October 2018. (*Id.* at pp. 629-632, 1260-1270, 1490-1499). On April 9, 2019, Plaintiff saw Dr. Padgett and reported no pain. (*Id.* at pp. 1490-1494). Plaintiff's physical examination at this visit was unremarkable. (*Id.*). Plaintiff did not report painful joints, weakness, tingling or numbness at his follow up visits in 2019 and 2020. (*Id.* at pp. 1262, 1268, 1492, 1497). Plaintiff's physical examinations in 2020 were likewise unremarkable. (*Id.* at pp. 1262, 1268).

### iii.    Our Lady of the Lake Neurology

On September 9, 2019, Plaintiff sought additional medical attention for back pain from Our Lady of the Lake Neurology Physician Group. (*Id.* at pp. 1450-1460).

8

An MRI was ordered, which revealed that Plaintiff had mild degenerative disc disease. (*Id.* at p. 1470). Plaintiff was prescribed baclofen and tramadol, then referred to physical therapy. (*Id.* at pp. 1461-1469). In January 2020, Plaintiff reported to Nurse Practitioner Sharon Jackson at Our Lady of the Lake that his back was feeling substantially better. (*Id.* at pp. 1202-1213). Plaintiff then saw Dr. Kevin Callerame, a neurologist with Our Lady of the Lake, on April 24, 2020, to establish care and have his disability paperwork filled out. (*Id.* at pp. 1212-1220). Plaintiff saw Dr. Callerame again on July 22, 2020, and stated again that his back was feeling much better. Plaintiff also reported no present pain. (*Id.* at p. 1214). Dr. Callerame noted that Plaintiff's neuropathy was stable, and that Plaintiff would continue to be administered Gabapentin. (*Id.*).

### iv.        Independent Physician

On September 11, 2020, Defendant notified Plaintiff that it was currently reviewing the additional medical records, and would be retaining an independent physician to review the same and opine as to Plaintiff's current limitations. (*Id.* at pp. 1088-1091). Defendant retained Dr. Mahdy Flores to perform an independent evaluation, and in a report dated September 21, 2020, Dr. Flores concluded that Plaintiff was no longer disabled from September 13, 2020, onward. (*Id.* at pp. 1045-1051). To reach his conclusion, Dr. Flores reviewed Plaintiff's medical records from Dr. Padgett, Dr. Dupre, Dr. John E. McLachlan, a cardiologist, Dr. Callerame, and Nurse Practitioner Jackson. (*Id.*). Dr. Flores also acknowledged and reviewed the ruling made by the Administrative Law Judge (the "ALJ") on July 31, 2020, which

found that Plaintiff was disabled for purposes of social security benefits. (*Id.*). Dr. Flores disagreed with this determination, and stated that "given consideration to both the subjective and clinical information, the evidence does not suggest that the claimant suffers from a medical condition of such severity to warrant the placement of restrictions. . . for the current period through 9/13/2020 onward." (*Id.* at p. 1048). Dr. Flores's report was sent to Dr. Padgett, Dr. Callerame, and Dr. Dupre for their review and comment. (*Id.* at pp. 1035-1071). Only Dr. Padgett responded, and in an October 2020 correspondence he noted that he had not placed Plaintiff on work-related restrictions from September 13, 2020, onward. (*Id.* at p. 1032).

### v.    Cessation of Benefits and Subsequent Appeal

Defendant, based on the above, determined that Plaintiff was not disabled as defined under the Plan as of September 13, 2020. (*Id.* at pp. 1002-1010). Specifically, Defendant determined that the clinical evidence failed to support ongoing functional impairments that prevented Plaintiff from performing any gainful occupation based on his age, education, training, experience, station in life, and physical capacity as of September 13, 2020, and continuing thereafter. (*Id.* at pp. 1002-1006). Defendant notified Plaintiff of this determination on November 13, 2020. (*Id.* at p. 1003). In this notification, Defendant stated that it relied on the opinion of Dr. Flores, along with the medical records from Dr. Padgett, Dr. Callerame, Dr. Dupre, and Nurse Practitioner Sharon Jackson. (*Id.* at pp. 1002-1006). The decision of the ALJ was also considered. (*Id.*).

Plaintiff appealed Defendant's decision a year and a half later. (*Id.* at pp. 965-

976). Plaintiff contended in his appeal that "[r]heumatoid/psoriatic arthritis is a chronic, degenerative condition with no known cure." (*Id.* at p. 970). In Plaintiff's view, Defendant's decision and course of conduct was "contrived to deny due benefits for a lifelong disability based on supposed temporary improvement." (*Id.*). Plaintiff included in this appeal a form signed by Dr. Callerame on December 23, 2020, which concluded that Plaintiff was suffering from pain related to his degenerative spinal disease and peripheral neuropathy that was significant enough to limit his functioning. (*Id.* at pp. 973-974). Dr. Callerame's conclusions differ from those of Dr. Michael Green, another physician affiliated with Our Lady of the Lake, who stated in the progress notes for a video visit with Plaintiff on October 30, 2020, that for Plaintiff's peripheral neuropathy, "[g]abapentin does well for most part [sic]." (*Id.* at p. 579). As to his psoriatic arthritis, Dr. Dupre again concluded on December 10, 2020, that Plaintiff's psoriatic arthritis was in remission. (*Id.* at p. 572).

Defendant referred the matter to a different independent physician consultant for purposes of evaluating Plaintiff's appeal. (*Id.* at p. 956). This independent physician, Dr. Roger Belcourt, also concluded that Plaintiff was not suffering from a limiting or restrictive medical condition as of September 13, 2020. (*Id.* at pp. 956-962). Dr. Belcourt reviewed Plaintiff's medical records from Dr. Padgett, Dr. Dupre, Dr. Callerame, Our Lady of the Lake, and the findings of the ALJ to reach his conclusions, along with other medical records pertaining to Plaintiff from and before 2020. (*Id.*). Dr. Belcourt's report was sent to Plaintiff's attending physicians for review and comment, and none did. (*Id.* at pp. 925-950). Defendant consequently

informed Plaintiff on May 18, 2022, that it was upholding its determination that he
was no longer disabled as of September 13, 2020. (*Id.* at pp. 918-921).

### vi.        Additional Records

On October 31, 2022, Plaintiff sent Defendant additional medical records to be
included in the AR. (*Id.* at p. 390). In addition to these medical records, Plaintiff
provided sworn statements from himself, his relatives, and his friends, each asserting
that Plaintiff is suffering from a limiting disability and that the medications he takes
to combat this condition are cognitively inhibitive. (*Id.* at pp. 398-406).

A note bearing Dr. Callerame's signature dated September 26, 2022, setting
forth the same was also provided. (*Id.* at p. 407). In addition to this note, Dr.
Callerame provided a form setting forth Plaintiff's recommended restrictions. (*Id.* at
p. 409-412). This form recommends that Plaintiff should not be made to walk or stand
for more than one hour, or sit for over two hours. (*Id.*). Dr. Callerame further advised
that, in his opinion, Plaintiff should not be expected to be present for more than two
hours on an average workday. (*Id.* at p. 410). The limiting conditions identified by Dr.
Callerame were psoriatic arthritis and diabetic neuropathy. (*Id.*). Dr. Callerame also
opined that Plaintiff's medications were causing limiting side effects. (*Id.* at p. 412).
Dr. Callerame presumably refers here to the medication-induced brain fog reported
by Plaintiff. (*Id.* at pp. 399).

In response to these additional materials, Dr. Belcourt supplemented his
conclusions in an addendum dated November 18, 2022, to include a determination
that Plaintiff possessed medical conditions of such severity to warrant restrictions

and limitations as of July 18, 2022, and beyond. (*Id.* at pp. 383-385). The limiting medical conditions were mild lumbar degenerative disc disease, along with rheumatoid and psoriatic arthritis. (*Id.* at p. 371). Dr. Belcourt's recommended limitations for Plaintiff for those conditions consist of limiting Plaintiff's walking and standing to four hours a day. (*Id.* at p. 386). Dr. Belcourt also recommends that Plaintiff not lift or manipulate weights in excess of twenty pounds. (*Id.*). Dr. Belcourt lastly opined that Plaintiff was able to remain seated without restriction. (*Id.*).

## IV.    CONCLUSIONS OF LAW

Having carefully considered the above findings of fact, and based on the analysis provided below, the Court concludes that Defendant did not abuse its discretion in terminating Plaintiff's benefits effective September 13, 2020.

As an initial matter, while Defendant was both the insurer and administrator of the Plan, the Court finds no reason to substantially alter the level of deference afforded to Defendant's decision to terminate Plaintiff's benefits. Plaintiff failed to present any evidence or argument showing that this dual role impacted Defendant's decision-making. Plaintiff's vague and conclusory gestures towards the presence of a conflict, (*see* Doc. 26-1 at p. 23), do not suffice. *See Taylor v. Unum Life Ins. Co. of Am.*, No. CV 21-331-JWD-EWD, 2023 WL 2766018, at *14 (M.D. La. Mar. 31, 2023). Defendant's decision is thus only to be afforded a "modicum less deference than" would otherwise be the case. *Id.* (quoting *Corry*, 499 F.3d at 398). The Court therefore reviews Defendant's decision under an essentially undisturbed abuse of discretion standard, where Defendant's choice will be upheld so long as it was not an arbitrary

13

and capricious one. *See Jenkins*, 487 F.3d at 314.

As to this, the Court finds that Plaintiff has not carried his burden to prove, by a "preponderance of the evidence," *Batchelor*, 504 F. Supp. 3d at 610, that Defendant's actions were arbitrary or capricious, or that Defendant's decision to terminate Plaintiff's benefits was not rationally connected to the known facts. To the contrary, according to the findings of fact provided above, Defendant's decision was supported by substantial evidence. The Court provides an abridged account of some of that evidence below.

Plaintiff became disabled in March 2018. (AR at pp. 1714-1716). At this time, one of Plaintiff's treating physicians, Dr. Dupre, determined that Plaintiff suffered from rheumatoid arthritis and neuropathy. (*Id.*). Dr. Dupre stated that he believed Plaintiff could return to work in approximately six months. (*Id.*). Dr. Dupre never substantively altered this conclusion. (*Id.* at p. 1750). Notably, there is nothing in the record to indicate that Dr. Dupre ever concluded that Plaintiff suffered from disabilities so significant as to preclude Plaintiff from working indefinitely.

Despite the limited nature of Dr. Dupre's disability finding, Defendant approved Plaintiff's long-term disability claim in September 2018. (*Id.* at pp. 1674-1675). After receiving benefits for two years, Defendant required Plaintiff to provide supplementary materials to support Plaintiff's continued disability qualification. (*Id.* at pp. 1351-1353). At this time, the definition of total disability was changed by the terms of the Plan, so that now Plaintiff needed to demonstrate that he was unable to engage with reasonable continuity in any occupation which he could reasonably be

expected to perform given his age, education, training, experience, station in life, and physical and mental capacity. (*Id.* at p. 27).

Plaintiff medical records show that in 2019 and 2020, Plaintiff's limiting disabilities were changed to psoriatic arthritis and neuropathy, and that these conditions were either in remission or controlled by medication. (*Id.* at pp. 1094-1097, 1276-1284, 1342-1349, 1506-1516). Plaintiff's visits with his then primary care physician, Dr. Padgett, were unremarkable, and Plaintiff did not report significant pain or painful joints, weakness, tingling or numbness. (*Id.* at pp. 1262, 1268, 1492, 1497).

A review of the AR shows that Dr. Callerame was the only physician who ever concluded that Plaintiff was totally disabled for an indefinite period of time. Despite this, Dr. Callerame noted in July 2020, several months prior to Defendant terminating Plaintiff's long-term disability benefits, that Plaintiff's back was feeling better, that Plaintiff reported no pain, and that Plaintiff's neuropathy was stable on medication. (*Id.* at pp. 1212-1220).

In September 2020, Defendant retained Dr. Flores to conduct an independent medical evaluation of Plaintiff's medical records. (*Id.* at pp. 1088-1091). Dr. Flores did so, and concluded that Plaintiff was no longer disabled. (*Id.* at pp. 1045-1051). At this time, two years of evidence existed showing that Plaintiff's condition had improved markedly, and not a single physician recommended that Plaintiff be restricted from all work. (*Id.* at pp. 1094-1097, 1276-1284, 1342-1349, 1506-1516). To the contrary, upon being provided with Dr. Flores's report concluding that Plaintiff

was no longer disabled, Dr. Padgett stated that he had not placed Plaintiff on restrictions from September 2020 onward. (*Id.* at p. 1032).

Plaintiff argues that Dr. Flores's determination was erroneous in part because it acknowledges the ALJ's finding of Plaintiff's disability but comes to a differing conclusion. (Doc. 28 at p. 3). As Defendant notes, failure to acknowledge Social Security Administration ("SSA") findings can itself be evidence of procedural unreasonableness. *See Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010). Administrators may avoid this procedural unreasonableness by, as Defendant has done here, "simply acknowledg[ing] the award and conclud[ing] that, based on the medical evidence before it, the evidence supporting denial was more credible." *Id.* at 471 fn. 3.

Nor was Defendant unreasonable in refusing to come to the same conclusion as the ALJ. SSA disability findings are not binding on plan administrators. *Taylor*, 2023 WL 2766018, at *24 (citing *Chisholm v. Guardian Life Ins. Co. of Am.*, 449 F. Supp. 3d 619, 636 (M.D. La. 2020)). Here, Dr. Flores concluded that "given consideration to both the subjective and clinical information [provided], the evidence does not suggest that [Plaintiff] suffers from a medical condition of such severity to warrant the placement of restrictions or limitations on activities for the current period through 9/13/2020 onward." (AR at p. 1083). Based on the facts outlined above alone, there was ample evidence in the record to support Dr. Flores's conclusions. Defendant therefore did not abuse its discretion by opting to credit the conclusions of Dr. Flores, a physician, as opposed to those of the ALJ. *See Schexnayder*, 600 F.3d

465, 471 n. 3; *see also Williams v. Hartford Life Ins. Co.*, 243 F. App'x 795, 797 n.1 (5th Cir. 2007) (plan administrator was "not required to defer to a Social Security ruling.").

Plaintiff also relies on statements made by Dr. Callerame after Defendant made its initial disability determination, along with various sworn statements by himself, his family, and his friends, to argue that Defendant made an irrational conclusion in terminating Plaintiff's benefits. (Doc. 28 at pp. 3, 5-6). The Court is not persuaded.

First, Dr. Callerame's December 2020 statements were provided to Defendant's second independent medical examiner, Dr. Belcourt, who still determined that Plaintiff was not disabled. (*Id.* at pp. 956-962). Dr. Belcourt concluded that Plaintiff's pain could be "alleviated or improved by medical compliance, physical therapy, home exercises, and constant follow-up. Hence, [Plaintiff] did not have significant impairment in his function that warrants restrictions and limitations." (*Id.* at p. 962). Plaintiff's medical records provided support for Dr. Belcourt's conclusion. In December 2020, Dr. Dupre noted that Plaintiff's psoriatic arthritis was in remission. (*Id.* at p. 572). In October 2020, Dr. Green noted that Plaintiff's peripheral neuropathy was mostly controlled by medication. (*Id.* at p. 579).

Second, Dr. Callerame's July 2022 statements were provided to Dr. Belcourt after the issuance of his first report, yet Dr. Belcourt still maintained his previous conclusion that Plaintiff was not disabled as of September 13, 2020, which is the

17

critical date for purposes of evaluating Defendant's decision to terminate benefits. (*Id.* at 383-385). Dr. Belcourt did amend his previous report upon receipt of Dr. Callerame's July 2022 statements to include that, in his opinion, Plaintiff was partially disabled as of July 18, 2022, by mild lumbar degenerative disc disease and arthritis, but this disability finding focuses on a period roughly two years after the relevant determination date, and Dr. Belcourt's recommended restrictions are far looser than those put forth by Dr. Callerame. (*See id.* at pp. 386, 410). To this point, even if the Court were to accept Dr. Belcourt's opinion that Plaintiff was disabled as of July 18, 2022, and so Defendant's decision to terminate Plaintiff's benefits in September 2020 was arbitrary and capricious, Dr. Belcourt's recommended limitations, most notably that Plaintiff can sit for unrestricted periods of time, do not readily show that Plaintiff would be unable to perform any occupation with reasonable continuity in light of his age, education, training, experience, station in life, and physical and mental capacity. (*Id.* at p. 386).

Finally, as to the affidavits submitted in support of Plaintiff's painful condition, Defendant was not obligated to afford such statements decisive weight, especially when those statements were made roughly two years after the relevant disability determination date. *See Taylor*, 2023 WL 2766018, at *23 (citing *Chisholm*, 449 F. Supp. 3d at 635).

In sum, the record before the Court provides that at least five physicians have been asked whether Plaintiff was disabled for the period of September 13, 2020, onward. One has found that Plaintiff was totally disabled for this period, and three

have found or stated that Plaintiff was not subject to work-related limitations for September 13, 2020, onward. Each of these medical professionals either directly treated Plaintiff or was provided the relevant medical records. (AR at pp. pp. 956-962, 1045-1051, 1212-1220, 1683-1685). Moreover, as described above, the opinions of the medical professionals who concluded that Plaintiff was not disabled for the period of September 13, 2020, onward each had a cogent and factual basis for reaching this conclusion.

Consequently, based on the majority of opinions of treating or reviewing medical professionals, the findings of fact provided above, and the entirety of the AR, the Court finds that Defendant's decision to terminate Plaintiff's long-term disability effective September 13, 2020, was rationally connected to the known facts and was supported by far more than "a scintilla," *Anderson*, 619 F.3d at 512, of evidence. The Court therefore finds that Defendant did not abuse its discretion in terminating Plaintiff's long-term disability benefits, and will not reverse its decision to do so.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion For Judgment Under F.R.C.P 52 On ERISA Administrative Record (Doc. 26)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's **Response Brief On The Merits (Doc. 27)**, which the Court construes as a competing motion for judgment brought pursuant to Federal Rule of Civil Procedure 52, be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's action be and is hereby

**DISMISSED WITH PREJUDICE**.

    Judgment shall be entered separately.

          Baton Rouge, Louisiana, this _26th_ day of September, 2024

                      _____

                      **JUDGE BRIAN A. JACKSON**
                      **UNITED STATES DISTRICT COURT**
                      **MIDDLE DISTRICT OF LOUISIANA**